OPINION OF THE COURT
Felicia A. Mennin, J.
The slavish reliance on a preprinted, check-off-type supporting deposition to expedite the processing of a complaint charging loitering for the purpose of engaging in a prostitution offense (Penal Law § 240.37 [2]) can inadvertently render the accusatory instrument a legal nullity. Such conclusion is compelled when, as in this case, the accusatory instrument, reduced to its essence, merely provides that a woman previously arrested for prostitution-genre offenses was observed talking to three persons late at night in an area often frequented by prostitutes.
The defendant, Felicia McGinnis, has moved for an order dismissing the sole charge in the complaint, Penal Law § 240.37 (2) as a class B misdemeanor, as facially insufficient pursuant to Criminal Procedure Law §§ 170.30 (1) (a); 100.15 (3) and 100.40 (1) (a) and for other relief. The People have opposed the motion.[1]
Facial Insufficiency
The Complaint
In pertinent part, the factual allegations in the complaint read as follows:
“I [Police Officer Romulo Guerrero] state on information and belief, the source of which is the supporting deposition of Police Officer Daniel Fitzpatrick, Shield No. 3870 of the Midtown North Precinct to be filed with this instrument, that:
“Police Officer Daniel Fitzpatrick observed [on or about January 9, 2013 at about 2:15 a.m.] the defendant remain and wander about in that vicinity *185 [in front of 729 Seventh Avenue in the County and State of New York], a public place, for a period of approximately 20 minutes during which time defendant engaged in conversations with approximately 3 passerbys [sic].
“Moreover, the defendant’s general deportment and the surrounding circumstances indicated that the defendant was loitering for the purposes of prostitution in that Police Officer Daniel Fitzpatrick observed the defendant wearing BLACK PEA COAT, SKINNY JEANS AND PLATFORM SHOES, which were revealing in that OUTLINE OF DEFENDANT’S LEGS [sic], knows that the above location is frequented by people engaged in prostitution, observed that none of the motorists that approached were livery, taxi or bus drivers, observed that the defendant was not waiting at a bus stop or taxi stand, has seen the defendant before at the above location on other occasions engaging in the same conduct, has previously arrested the defendant for prostitution-related offenses and is experienced in the field of prostitution crimes; Police Officer Daniel Fitzpatrick has effected or assisted in over 50 prostitution arrests.
“Police Officer Daniel Fitzpatrick heard the defendant state, in substance, ‘YOU GUYS HAVEN’T SEEN ME FOR A MINUTE. CAN’T YOU GIVE ME A BREAK, [sic]’ ”
The Supporting Deposition
The facts alleged in the complaint closely track those supplied in the supporting deposition of Police Officer Fitzpatrick attached to the complaint. The supporting deposition is a form document and is comprised of a brief introductory narrative, followed by fill-in-the-blank and check-off allegations. The initial narrative alleges that the defendant was observed in front of 729 Seventh Avenue at 2:15 a.m., on January 9, 2013, and that the informant observed the defendant “remain and wander about in that vicinity” for a period of approximately 20 minutes. The form goes on to offer the affiant three choices to describe what the defendant did during the time when she or he was observed. The form supporting deposition alleges that the defendant: “a) beckoned to passing traffic or motorists; b) stopped or attempted to stop approximately — passerby(s) and/or— motorists; and c) engaged in conversations with approximately— *186 passerby(s) and/or motorists.” In response to all of these choices, the informant in this case has checked only the third option, indicating that the defendant had “engaged in conversations with 3 passerby(s) and/or motorists.”[2]
The boiler plate supporting deposition then goes on to list how the defendant’s general deportment and clothing choice and the surrounding circumstances indicated that the defendant was loitering for the purpose of prostitution and offers a number of allegations that may be checked off or filled in by the informant, if applicable. In this section, the supporting deposition has language that may be checked off relating to the officer’s experience regarding prostitution cases generally, and with the defendant personally. It also has a check-off section to indicate whether the location was frequented by people who engaged in prostitution, as well as an option to indicate whether the officer has previously personally arrested the defendant for “prostitution-related offenses.”[3] Each of these items is checked off on the form by the officer. The form does not include a blank check-off section which would allow the officer informant to write in additional facts based upon his personal observation in support of the complaint.
The Defendant’s Claim for Relief
The defendant argues that the accusatory instrument is facially insufficient. It is axiomatic that facial sufficiency is a non-waivable, jurisdictional prerequisite to a valid prosecution. (People v Alejandro, 70 NY2d 133 [1987].) In order to be facially sufficient, an information, together with any supporting deposi *187 tions, must meet three requirements: (1) allege facts of an evidentiary character supporting or tending to support the charge(s), pursuant to CPL 100.15 (3); (2) provide reasonable cause to believe that the defendant committed the offense(s) charged in the information; and (3) include nonhearsay factual allegations, which, if true, establish every element of the offense(s) charged. (See CPL 100.40 [1] [a]-[c].) This third requirement is what is referred to as a “prima facie” case. (People v McDermott, 160 Misc 2d 769 [Nassau Dist Ct 1994].) A prima facie case, also referred to as “legally sufficient evidence,” means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof. (See CPL 70.10 [1].)
The Statute and its Legislative History
Penal Law § 240.37 (2), which prohibits loitering for the purpose of engaging in a prostitution offense, provides that
“[a]ny person who remains or wanders about in a public place and repeatedly beckons to, or repeatedly stops, or repeatedly attempts to stop, or repeatedly attempts to engage passers-by in conversation, or repeatedly stops or attempts to stop motor vehicles, or repeatedly interferes with the free passage of other persons, for the purpose of prostitution, or of patronizing a prostitute as those terms are defined in article two hundred thirty of the penal law, shall be guilty of a violation and is guilty of a class B misdemeanor if such person has previously been convicted of a violation of this section or of sections 230.00 or 230.05 of the penal law.”
The statute requires for guilt of this offense that the defendant “repeatedly” engage in actions such as beckoning, stopping or attempting to stop, attempting to engage passersby in conversation or stopping or attempting to stop motor vehicles. This language reflects the purpose behind enactment of the legislation, the prevention of the commandeering of public places by persons whose aim is to proffer sex for money:
“Law abiding citizens in our cities have been increasingly subjected to harassment, interference, and embarrassment by persons engaged in and promoting prostitution activities. Moreover, vehicular traffic in our congested cities is often disrupted by persons engaged in this illicit activity.
“The public demands and should have protection *188 from invasion of its privacy.” (Assembly Introducer Mem in Support at 1-2, Bill Jacket, L 1976, ch 344.)
Nowhere is the legislative intention expressed more stridently than in the preamble to the newly enacted statutory section itself:
“The legislature hereby finds and declares that loitering for the purpose of prostitution, ... is disruptive of the public peace in that certain persons engaged in such conduct in public places harass and interfere with the use and enjoyment by other persons of such public places thereby constituting a danger to the public health and safety.
“The legislature further finds that in recent years the incidence of such conduct in public places has increased significantly in that persons aggressively engaging in promoting, patronizing or soliciting for the purposes of prostitution have, by their course of conduct in public places, caused citizens who venture into such public places to be the unwilling victims of repeated harassment, interference and assault upon their individual privacy, as a result of which such public places have become unsafe and the ordinary community and commercial life of certain neighborhoods has been disrupted and has deteriorated.” (1976 McKinney’s Session Laws of NY, vol 1 at 912-913.)
It is clear from the legislative history that the conduct targeted was aggressive, affirmative action by prostitutes (and pimps) plying their trade. The new statute, championed by the administration of Mayor Abraham Beame, even had a specific target area: Times Square and its surrounding streets,[4] which were described in one contemporary newspaper article as “a locale with elements of the Barbary Coast and a Hieronymus Bosch painting,”[5] with prostitutes “brazenly seeking trade sometimes grabbing men.” During the previous Lindsay administration, the New York Times reported a police crackdown against prostitution in the area was prompted by complaints *189 from businesspersons, workers, pedestrians and residents of harassment by prostitutes.[6]
Analysis of the Accusatory Instrument
The accusatory instrument alleges that the defendant remained and wandered about on a city block in the vicinity of Times Square in the early morning hours. No details are offered as to that alleged wandering, and the allegation is merely a repetition of the statutory language. The instrument goes on to allege that the defendant engaged in conversations with three passersby over the course of 20 minutes, but it is not alleged that she approached those persons or that she was the one to initiate the conversations. She is not even alleged to have gestured in some manner to draw the attention of the passersby to herself or to have slowed their passage in any way. Moreover, it is unreasonable to infer from the facts alleged in the boiler plate supporting deposition that these encounters involved three separate events. As the defendant argues, it is indeed just as reasonable to infer that the three passersby were together and that the conversations amounted to a single, joint encounter. Finally, there is nothing to indicate that those conversations were related to prostitution activity just because they occurred at 2:15 a.m. at a location frequented by persons who engaged in prostitution. The conversations could just as well have concerned a drug transaction, or completely innocent subject matter such as the defendant’s request for a cigarette or a match.
Allegation of Officer Informant’s Prior Arrest(s) of Defendant and Prior Experience
The accusatory instrument does allege that the officer informant had seen the defendant at the location on other occasions and had arrested her before for “prostitution-related offenses” (unspecified) and that the area is often frequented by persons engaged in prostitution. Such factors may be taken into account as to whether an accusatory instrument has established reasonable cause to believe that loitering for the purpose of engaging in a prostitution offense has taken place. (See People v Smith, 44 NY2d 613, 622 [1978]; People v Jackson, 177 Misc 2d 657, 662 [Crim Ct, NY County 1998].)[7]
In this case, the supporting deposition indicates that Officer *190 Fitzpatrick has made or assisted in over 50 prior prostitution arrests. At least one court has held that such professional history must be pleaded for the accusatory instrument to be facially sufficient. (.People v Denise L., 159 Misc 2d 1080, 1083 [Crim Ct, Queens County 1994].) The accusatory instrument also alleges that the officer had arrested the defendant previously for “prostitution-related offenses,” whatever that might include. As noted earlier in this decision, such broad formulaic language does not distinguish between loitering for the purpose of engaging in a prostitution offense and the completed offense of prostitution, nor does it give any indication of whether those arrests resulted in convictions, or whether the complaints in those arrests, like this one, were found to be facially insufficient by a court.
However, neither a police officer’s extensive experience in making arrests for a particular type of offense nor his extensive prior experience with a particular defendant requires a court to make a leap of faith by accepting the officer’s opinion that such offense occurred in a given case in the absence of salient cited facts backing up that opinion. Such circumstantial factors do not, in and of themselves, establish reasonable cause to believe that the defendant committed the current offense. An arrest or conviction “based on simple loitering by a known prostitute” is not authorized by Penal Law § 240.37. (.People v Smith, 44 NY2d at 621.)
Absence of Observed, Overt Acts Demonstrating Willingness to Prostitute
What is essential to a legally sufficient complaint are allegations of “loitering plus additional objective conduct evincing that the observed activities are for the purpose of prostitution . . . .” (Id.) The observed acts must be consistent with the efforts that a prostitute would be expected to make to attract the attention of potential clientele. The accusatory instrument fails to identify the defendant as the person who initiated the alleged conversations with the three passersby. It does not identify the three passersby as male.[8] Nor does it even allege *191 that the defendant approached the passersby rather than the other way around.[9] The defendant is not alleged to have touched anyone, detained any motorists, or blocked the passage of any person.
By contrast, such forwardness on the part of the defendant was demonstrated in each of the cases cited by the People in support of their response in opposition. (See People v Byrd, NYLJ, May 18, 1990 at 21, col 4 [App Term, 1st Dept] [repeatedly stopping motorists]; People v Jackson, 177 Misc 2d at 661 [beckoning, stopping or attempting to stop or engaging in conversations with passersby and motorists for 15 minutes]; People v Koss, 153 Misc 2d 68 [Crim Ct, NY County 1992] [defendants standing in the middle of the street beckoning to and stopping male motorists]; People v Jones, NYLJ, Sept. 20, 1989 at 21, col 2 [App Term, 1st Dept] [standing in the middle of the street and beckoning and stopping motorists].) In People v White (NYLJ, Jan. 26, 1989 at 22, col 6) too, the accusatory instrument alleged that the defendant repeatedly beckoned to, stopped and attempted to engage motorists in conversation, causing a traffic obstruction.[10] (See also People v Farra S., 3 Misc 3d 1107[A], 2004 NY Slip Op 50482[U] [Crim Ct, NY County 2004] [unreported] [standing in the street beckoning to motorists, stopping or attempting to stop motorists and engaging in conversation with a passerby and motorist].)
Description of Defendant’s Clothing Provides No Weight to Instrument
The informant’s emphasis on the defendant’s clothing as a telltale sign that she was marketing herself commercially is astonishing. The defendant is alleged to have been wearing a black pea coat, skinny jeans which revealed the outline of her legs and platform shoes. This information was again supplied in the supporting deposition in response to a request to “fill in the blank.” Any current issue of a fashion magazine would display plenty of women similarly dressed. However, the choice of such *192 outfit hardly demonstrates the wearer’s proclivity to engage in prostitution. Indeed, the complaint’s characterization of the jeans as “revealing” because they “outline[d] [the] defendant’s legs” seems more to be expected in the dress code of a 1950s high school than a criminal court pleading.
The defendant’s clothing in this case stands in stark contrast to the clothing relied upon as circumstantial proof of loitering for purposes of prostitution in the cases cited by the People. For instance, in Byrd, the defendant’s clothing exposed her buttocks. In Jones, the defendant was allegedly dressed in a skirt and a black bra with no other covering on her upper body. In Farra S., the defendant was wearing a shirt, the cut of which revealed the sides of her breasts. In Koss, one defendant was dressed in a black leopard two-piece bathing suit and high heels. In such instances, reliance upon attire as a factor appears more reasoned.[11]
Defendant’s Alleged Statement Too Innocuous
Finally, not even the defendant’s alleged statement (“You guys haven’t seen me for a minute. Can’t you give me a break, [sic]”) included in the accusatory instrument provides any meaningful support. The statement is at best ambiguous and contains no admission of guilt.[12]
Conclusion
Accordingly, the defendant’s motion for an order dismissing the accusatory instrument for facial insufficiency is hereby granted. The lengthy analysis of the weaknesses in the prefabricated form was not done to suggest that forms should not be used at all or that officers should not rely upon their training and experience in evaluating street situations. Rather, it was done with an eye towards emphasizing the need for an individu *193 alized recitation of facts which set forth the elements of an offense based upon the actual observations of the deponent in a given case.
Because of this disposition, the court has not addressed the defendant’s other motions or those of the People.

. The People have served the appropriate supporting deposition proving the relevant prior convictions on the part of the defendant and the issue of whether the charge should proceed as a class B misdemeanor was not challenged by the defense.

. In the bottom half of the supporting deposition, curiously, and somewhat inconsistently, the officer checked off a box that states: “[N]one of the motorists approached were livery, taxi or bus drivers.” However, neither in the quoted portion above nor in any other portion of the complaint or supporting deposition is there an indication that the defendant had any interaction with motorists. Indeed, as the quoted portion shows, the officer left blank the spaces provided for indicating such engagement. The complaint similarly parrots this same inconsistency in its recitation of the facts. Accordingly, the court must conclude that this allegation in the bottom part of the form supporting deposition was checked off by the officer in error, and that the defendant did not approach any motorists.

. The form does not define the term “prostitution-related offenses,” nor does it specify whether any of the prior arrests of the defendant made by the officer were for the completed offense of “Prostitution,” rather than “Loitering for the purpose of engaging in a prostitution offense,” or “Promoting prostitution.” Similarly, there is no indication as to whether the officer knew that the defendant had been convicted previously of any of those offenses, as opposed to merely having been arrested for them.

. Goldstein, Experts Say 2 Laws Proposed to Clean Up Times Square Face Constitutional Problems, NY Times, Nov. 3, 1975.

. Schumach, Major Drive on Illicit Sex is Being Drafted by City, NY Times, Sept. 1, 1975.

. Arnold, Most Times Square Prostitutes Staying off Street to Avoid Arrest, NY Times, July 9, 1971.

. Indeed, in People v White (NYLJ, Jan. 26, 1989 at 22, col 6 [App Term, 1st Dept]), the officer deponent’s failure to allege in two of the cases on joint *190 appeal that on the dates in question he knew the defendant “to be a prostitute” led the appellate panel to hold those accusatory instruments facially insufficient.

. Such information is not necessarily indicative of activity relating to prostitution, but might be relevant given the totality of the circumstances.

. Thus, the fact that the officer checked off on the form that he had observed the defendant at that same location on other occasions engaging in the same conduct does not add any weight to the allegations in this complaint.

. If the defendant had been observed approaching motorists, which is not alleged, the fact that she did not approach taxi or bus drivers might be circumstantial support that she was seeking sexual clientele for assignations in an automobile. Contrary to what the People argue, under the alleged circumstances the absence of any observed approach towards such commercial drivers is devoid of meaning. It is not a reasonable inference that a woman remained on a city sidewalk at a location for prostitution purposes because she did not hail a cab and the location was not a cabstand or bus stop.

. Granted, this incident occurred in the middle of winter. However, a “pea coat” is still standard issue to members of the U.S. Navy and models of such coats are made and sold routinely to men, women and children, and blue jeans, skintight or baggy, are practically an American icon. Accordingly, it is difficult to imagine what, if any, significance at all the defendant’s clothing might have in this case, either individually, or taken collectively with other meaningful circumstances, as any indicia of a link to prostitution. It would appear that the officer was just tempted to “fill in” this blank of the supporting deposition because it was there.

. Given the lack of any other surrounding circumstances indicating that the defendant was loitering for purposes of prostitution, even if the statement could be construed as some form of weak admission, it would not be enough to sustain the charge in this particular case.